### UHR v. LANCASTER. (No. 5761.)

(Court of Civil Appeals of Texas. San Antonio. June 7, 1916.)

1. MUNICIPAL CORPORATIONS ☞180(3)—ORDINANCES—CONSTRUCTION.

An ordinance providing that the police force of the city of San Antonio shall consist of a chief marshal, assistant marshals, and patrolmen, although not establishing a police force, created the office of marshal, because specially named.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 452, 453, 455, 466; Dec. Dig. ☞180(3).]

2. MUNICIPAL CORPORATIONS ☞183(2)—MUNICIPAL OFFICERS—TERM OF OFFICE.

Under San Antonio City Charter, amendment of 1915, § 16, par. 2, providing that appointive officers shall hold office until the appointment and qualification of their successors, when plaintiff admits that defendant had been appointed in 1913 in accordance with an ordinance creating the position of marshal, and does not allege that a successor has been appointed and qualified, a writ of injunction restraining defendant from exercising the duties of the position of marshal will not be allowed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 476; Dec. Dig. ☞183(2).]

3. MUNICIPAL CORPORATIONS ☞183(1)—CITY CHARTER—"EMPLOYÉ."

Under the City Charter of San Antonio as amended in 1915, enumerating the elective and appointive officers of the city and providing that officers and employés hold office for two years, the city marshal not being enumerated, although an officer contemplated by Const. art. 16, § 17, providing that all officers of the state shall continue to perform their duties until their successors are duly qualified, is an employé, and not an appointive officer appointed by the mayor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 473; Dec. Dig. ☞183(1).

For other definitions, see Words and Phrases, First and Second Series, Employé.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Suit for injunction by Robert F. Uhr against F. H. Lancaster. Judgment for defendant, and plaintiff appeals. Affirmed.

Jos. Ryan, Frank H. Wash, Scott & Dodson, and Robt. P. Coon, all of San Antonio, for appellant. Geo. R. Gillette, Robt. G. Harris, and R. J. McMillan, all of San Antonio, for appellee.

FLY, C. J. Appellant sought by this suit to restrain appellee from interfering with appellant or persons serving in the police department of the city of San Antonio in the discharge of their duties; from interfering with appellant in the possession and control of the said police department and the property belonging to said department; from maintaining an office in the building occupied by the police department; from removing or attempting to remove any officer, agent, or employé of said department; from controlling and attempting to control the office room, desk, or mail of appellant, as commissioner of the police and fire department of San Antonio, or any officer or employé thereof, and from interfering with appellant in the enforcement of all fire and police regulations, and from interfering with appellant in the supervision of the police department of said city and the city pound. A temporary writ was refused, upon a hearing, and, from the order of refusal, this appeal has been prosecuted.

[1] It appeared from the facts that appellee was appointed city marshal of San Antonio by its mayor, Clinton G. Brown, in July, 1913, and his appointment was confirmed by the council in the same month and year, and, at the same time, appellee took the oath of office and gave the required bond. He has not been reappointed, nor has he taken the oath nor given a bond since that time. He has been drawing the salary attached to the office of marshal ever since. On May 1, 1916, Robert Uhr, commissioner of the police and fire department, placed on the bulletin board in the police station a notice to all officers and employés of the department that he had appointed J. R. Baldwin city marshal and chief of police, and directing them to report to said Baldwin. That order was not respected by appellee, who issued a counter order to the officers of the police department, who obeyed his order. Appellee did not interfere in any manner with appellant's supervision of the police department, and he expressed a willingness to obey the lawful instructions of appellant. It was agreed that appellee had taken and obeyed orders given by the mayor and had performed all other matters and things in any way appertaining to, or connected with, the office of city marshal.

The following ordinance was passed by the city council and approved by the mayor on March 2, 1903:

"The police force of the city of San Antonio shall consist of one chief marshal and two assistant marshals, one police matron, and such mounted and unmounted patrolmen as the mayor and city council may deem necessary."

On August 7, 1899, the following ordinance was passed:

"The police force of the city of San Antonio will consist of the following grades: Chief marshal (ex officio chief of police), assistant marshal or marshals, and patrolmen."

Those ordinances were never repealed or modified until the adoption of the ordinance of May 4, 1916, which was an ordinance to establish a police force and regulate the same in and for the city of San Antonio.

In 1903, a charter was granted the city of San Antonio, which, with amendments adopted in 1907 (Laws 1907, p. 526), and 1911 (Gammel's Laws 1911, p. 878), remained the charter of the city until the adoption of the present amended charter, known as the "Commission Charter." In the charter of 1903 it was provided:

"The present elective officers of the city of San Antonio shall continue to perform the duties of their offices, unless removed as herein provided, until the general election under this charter, and all ordinances of the city of San Antonio now in force not contrary to the provisions of this act and the laws of this state shall continue in force until repealed."

At the time that act went into effect there was in effect an ordinance, passed by the city council on March 2, 1903, as follows:

"The police force of the city of San Antonio shall consist of one chief marshal and two assistant marshals, one police matron, and such mounted and unmounted patrolmen as the mayor and city council may deem necessary."

That ordinance was not in conflict with the provisions of the charter which afterwards took effect on July 1, 1903. Neither was the provision contrary to any state law, and consequently it was just as effective after the charter of 1903 went into effect as it was before. The amendments of 1907 and 1911 in no wise changed or affected the ordinance in question. In the amendment adopted in 1915, it is provided in section 134:

"All rules, regulations and ordinances of the city, which shall be in force when these amendments take effect, and not in conflict herewith, shall remain in full force and effect until otherwise amended, altered, or repealed."

The ordinance creating the position of marshal was not in any manner disturbed by the adoption of the amendment of 1915, under the enabling act of April 7, 1913, Gammel's General Laws, p. 307. Under the charter of 1903, section 65, the city council was given the power and authority to establish a police force, and the recognition of the ordinance of 1903 by the council, and a failure to repeal it, maintained it in its full force and effect, and it was continued under the amendments of 1915. Under the amendments of 1915, the commission was given the same powers theretofore held by the city council, and is given the power "to enact, ordain, alter, modify, or repeal any and all ordinances not repugnant to this charter, and the Constitution and laws of this state." While that provision is rather uncertain, because if literally construed it would prevent the alteration, modification, or repeal of any ordinance, if it was repugnant to the charter or the Constitution and laws of the state, still no attempt has been made to repeal the ordinance of 1903, which created the position of city marshal.

In the case of City of San Antonio v. Coul-

tress, 169 S. W. 917, decided by this court, it was held that the position of patrolman had never been established, because the number of patrolmen or policemen had not been specified, but.left it in the hands of the mayor to expand or contract the police force. In other words, there was no provision by ordinance for a police force. The authorities in that case go no further than the Coultress Case, and in none of them has it been held that where an ordinance has provided for a marshal, although it may not have provided for a police force, the provision as to the marshal was not binding and in accord with charter provisions. The ordinance created the office of marshal, because specially named, and not left to any contingency. Moon v. Mayor, 214 Ill. 40, 73 N. E. 408. It follows that, when appellee was appointed in 1913, the de jure office of city marshal was in existence, because it had been duly established by ordinance under the provisions of sections 51 and 65 of the charter of 1903. Very inadequate steps may have been taken to establish a police force, but the head of it at least was created.

[2] If there had been any question as to the right of appellee to the office of city marshal, it has been dissipated by the admission of appellant—

"that on or about the ―――― day of July, 1913, defendant Lancaster was appointed by the then mayor, and confirmed by the then council of said city, as city marshal and chief of police of said city; and under section 17 of the charter then governing said city, * * * the said Lancaster was appointed and had the right to act as such until the general city election, which plaintiff avers was held on the second Tuesday in May, A. D. 1915, and until his successor, if any, should be appointed and qualified."

It is not claimed that any successor of appellee has been appointed and qualified, nor could he be until such successor was proposed and nominated by the commissioner of fire and police and had been confirmed by a majority vote of the commission. Section 16, par. 2, Amendment of 1915. In view of the admissions in the petition, no writ of injunction could have been properly issued, and a discussion of the law could have been omitted, as it could serve no purpose unless to demonstrate that appellant followed the law in his admissions.

[3] Still, in spite of the admissions, it is contended that, under the terms of the latter part of section 134 of the amendment of 1915, the city marshal went out of office when the mayor and commissioners were elected and qualified. The charter amendment of 1915 names the appointive officers in section 16, paragraph 1, and the city marshal is not included among them; and he must be ranked, so far as the charter provisions are concerned, as an employé of the police department, who is to be proposed and nominated for his position by the commissioner of the department of fire and police, and conse-

quently would not be included under the description, "all officers of the city of San Antonio." If he is so included, however, and as fixing his tenure of office he would be, then his term would be for two years, and as admitted by appellant until his successor is duly appointed and qualified. Callaghan v. Tobin, 40 Tex. Civ. App. 448, 90 S. W. 331; Paris v. Cabiness, 44 Tex. Civ. App. 592, 98 S. W. 927. So far as the term of office is concerned, the Constitution designates every employé of the police and fire department as an officer; but under the amendment of 1915 to the city charter he is ranked as an employé, and not as an officer to be named by the mayor. He was, whether employé or officer, entitled to hold the office of marshal for two years and until his successor was duty appointed and qualified. Section 17 of the amendment of 1915 provides that all appointive officers and employés, except day-laborers, unless otherwise specified in the order making the appointment, shall hold office for two years. The Constitution (article 16, § 17) provides:

"All officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

The city marshal is an officer contemplated in that constitutional provision. Appellant adds to the charter provision, in section 17, the words, "and no longer," but they are not there, and, if they were, they would not override the Constitution.

The judgment is affirmed.